**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **JULIA P.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO, Commissioner of Social Security,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:25-cv-00457-JCB**<br><br>**Magistrate Judge Jared C. Bennett** |

## PROCEDURAL BACKGROUND[1]

Plaintiff Julia P. ("Plaintiff") alleges disability due to various physical and mental impairments. Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act[2] and Supplemental Security Income under Title XVI of the Social Security Act[3] in November 2021.[4] The Commissioner denied Plaintiff's claims initially[5] and upon reconsideration.[6] On June 22, 2023, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[7] The ALJ issued a written decision on July 20, 2023,

[1] Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment. ECF No. 7.

[2] 42 U.S.C. §§ 401-434.

[3] 42 U.S.C. §§ 1381-1383f.

[4] ECF No. 9, Administrative Record ("AR ___") 367-374.

[5] AR 110-23.

[6] *Id*. at 124-39.

[7] *Id*. at 86-109.

denying Plaintiff's claims.[8] Plaintiff appealed, and, on November 16, 2023, the Appeals Council vacated the hearing decision and remanded the case to an ALJ for resolution.[9]

On May 30, 2024, Plaintiff once again appeared with counsel for a hearing before an ALJ.[10] The ALJ issued a written decision on June 7, 2024, denying Plaintiff's claims.[11] Plaintiff appealed this adverse ruling, and, on April 9, 2025, the Appeals Council denied her appeal,[12] making the ALJ's decision final for purposes of judicial review.[13] Plaintiff then filed suit in this court seeking review of Commissioner of Social Security Frank Bisignano's ("Commissioner") final decision.[14]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[15] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[16] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a

[8] *Id*. at 140-61.

[9] *Id*. at 162-67.

[10] *Id*. at 56-78.

[11] *Id*. 27-55.

[12] *Id*. 1-6.

[13] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[14] ECF No. 1.

[15] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation modified).

[16] 42 U.S.C. § 405(g).

preponderance."[17] "In reviewing the ALJ's decision, [the court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[18] "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[19]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[20] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[21]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [the claimant's] impairments would have more than a minimal effect on [the claimant's] ability to do basic work activities, [the claimant] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[22]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any

---

[17] *Lax*, 489 F.3d at 1084 (citation modified).

[18] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (citation modified).

[19] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified).

[20] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[21] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[22] *Williams*, 844 F.2d at 750-51 (citation modified); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

gainful activity, regardless of his or her age, education, or work experience."[23] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[24] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[25] An individual's RFC is his or her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from his or her impairments.[26] In making this determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe.[27]

For the fourth step, the claimant must show, given his or her RFC, that his or her impairments prevent performance of his or her "past relevant work."[28] "If the claimant is able to perform his [or her] previous work, he [or she] is not disabled."[29] If, however, the claimant is not able to perform his or her previous work, the claimant "has met his [or her] burden of proof, establishing a prima facie case of disability."[30]

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[31] The decision maker must determine "whether the

---

[23] 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[24] *Williams*, 844 F.2d at 751.

[25] 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e).

[26] *Id.* §§ 404.1545(a)(1), (b)-(c), 416.945(a)(1), (b)-(c).

[27] *Id.* §§ 404.1545(a)(2), (e), 416.945(a)(2), (e).

[28] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[29] *Williams*, 844 F.2d at 751.

[30] *Id.*

[31] *Id.*

claimant has the [RFC] to perform other work in the national economy in view of his [or her] age, education, and work experience."[32] If the claimant "can make an adjustment to other work," then he or she is not disabled.[33] If, on the other hand, the claimant "cannot make an adjustment to other work," he or she is disabled and entitled to benefits.[34]

## ANALYSIS

The court reverses and remands the Commissioner's decision because the court cannot meaningfully review the ALJ's determination regarding a central consideration of this case: how frequently Plaintiff suffers from migraines that are so severe that she must miss work. The court first (I) describes how the ALJ's opinion erred by failing to determine how frequently Plaintiff suffers from debilitating migraines then (II) explains why this error is harmful.

### I. The ALJ's Opinion Erred by Failing to Determine How Frequently Plaintiff Experiences Migraines That Render Her Unable to Work.

The ALJ found that Plaintiff has a history of near-constant headaches, including recurring migraines.[35] Plaintiff testified that these headaches could be severe, could lead to her losing consciousness, and that she blacks out two to four times per week.[36] The ALJ notes that Plaintiff testified that she "sees black spots and passes out" when she has severe headaches and that she

[32] *Id*. (citation modified); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[33] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[34] *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[35] AR 33.

[36] *Id*. at 39, 99.

"spends 2 to 4 days in bed per week due to migraines."[37] The ALJ additionally notes Plaintiff's testimony that her "blackouts are random."[38]

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of these headaches not entirely consistent with the medical evidence and other evidence in the record.[39] By way of example, the ALJ notes that Plaintiff, despite suffering from migraines, testified that she graduated at the top of her class, earned a 4.0 GPA in college, and worked well above her "substantial gainful activity" levels in semi-skilled and skilled occupations for a decade.[40] The ALJ also notes that Plaintiff testified that she "does not blackout *as often*" since starting Botox treatments,[41] that Plaintiff's physical examinations have been unremarkable,[42] and that Plaintiff reported her migraine conditions have improved.[43]

Based upon testimony from a vocational expert, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work,[44] including in representative occupations such as office helper,[45] addresser,[46] and mail sorter.[47] However, the vocational

---

[37] *Id*. at 39.

[38] *Id*.

[39] *Id*. at 40.

[40] *Id*.

[41] *Id*. at 39 (emphasis added).

[42] *Id*. at 40-42.

[43] *Id*. at 41.

[44] *Id*. at 48.

[45] DOT #239.567-010.

[46] DOT #209.587-010.

[47] DOT #209.687-026.

expert also testified that someone in Plaintiff's position could not perform these jobs—or any jobs in the national economy—if, due to her impairments, she would be absent on an unscheduled but recurring basis two to three times per month.[48]

The ALJ predicated his decision on the vocational expert's testimony that Plaintiff can perform the work required by jobs that exist in significant numbers in the national economy.[49] If, as the ALJ found, Plaintiff loses consciousness because of migraines, and if she experiences two to three migraine days per month, then the question is whether Plaintiff would have to miss two to three days of work each month on an unscheduled basis and, therefore, would not be able to perform the jobs identified by the vocational expert. To find Plaintiff not disabled, then, the ALJ must have concluded that Plaintiff's migraines do not preclude her from working more than once per month.[50] The ALJ's opinion is full of statistics that say how much Plaintiff's migraine pain has been reduced; the percentage by which "migraine days" (whatever that term means) have been reduced; and that the number of monthly migraine days have ebbed and, sometimes, increased over time.[51] But the ALJ does not state how all these varied statistics and medical observations can reliably lead to the conclusion that Plaintiff will not miss more than one day of work per month because of migraines. This leaves the court unable to meaningfully review the ALJ's opinion.

---

[48] AR 75-76.

[49] *Id*. at 48

[50] The court assumes that a migraine may occur while Plaintiff is scheduled to work and that Plaintiff cannot work while experiencing a migraine that causes her to lose consciousness.

[51] AR 38-42.

In sum, the ALJ found that Plaintiff suffered from migraines, noted Plaintiff's testimony that she would lose consciousness from these migraines two to four times per month, and still found Plaintiff capable of adjusting to other work that was not compatible with two to three unscheduled absences per month due to Plaintiff's health conditions. As the ALJ did not articulate why he concluded, or even *that* he concluded, that Plaintiff's migraines would not lead to two to three work absences per month, the ALJ erred.

## II. The ALJ's Error Is Harmful Because It Directly Impacts Whether There Are Jobs in the National Economy that Plaintiff Can Perform.

Even where an ALJ errs, the court remands for further proceedings only where the error is harmful.[52] In the Social Security context, the court considers errors harmful when they undermine confidence in the determination of the case.[53] Here, the ALJ's error is harmful because it directly impacts whether there are jobs in the national economy that Plaintiff can perform and, therefore, whether Plaintiff is disabled. The ALJ's opinion does not conclude how frequently Plaintiff's migraines occur, or whether Plaintiff can work while experiencing one. The court cannot speculate as to how the ALJ bridges the gap between Plaintiff's claims of blacking out two to four times per month and the ALJ's implicit conclusion that Plaintiff would miss no more than one day of work per month due to her migraines. Such speculation has no place in appellate review.[54]

---

[52] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Benavidez v. Colvin,* 650 F. App'x 619 at 622 (10th Cir. 2016).

[53] *See, e.g.*, *Allen*, 357 F.3d at 1145.

[54] *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.").

The ALJ's conclusion about Plaintiff's migraine-caused work absenteeism, which the court is left to infer from an opinion that does not address the issue directly, is foundational to the ALJ's determination that Plaintiff is not disabled. If Plaintiff must miss two to three days of work per month due to her migraines, she would not be able to perform any of the jobs the vocational expert identified. This would mean she would be disabled. Because the court cannot follow the ALJ's reasoning on a point that is critical to the disability determination, the ALJ's decision must be reversed.

## ORDER

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED to the Commissioner for proceedings consistent with this Memorandum Decision and Order.

IT IS SO ORDERED.

DATED this 29th day of September 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge